**EICHEN CRUTCHLOW ZASLOW, LLP**
**Christopher J. Conrad, Esq., - ID no. 0247752017**
40 Ethel Road
Edison, New Jersey 08817
(732) 777-0100
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| FELIX SANTIAGO,<br><br>      Plaintiff,<br><br> vs.<br><br>UNITED STATES OF AMERICA; United States Drug Enforcement Agency ("DEA"), County of Hudson, County of Hudson Prosecutor's Office, County of Hudson Prosecutor's Office Narcotics Task Force, DEA New Jersey Task Force 1, Detectives Michael Patti, Mario Novo, Josue Velez, Chad Gigante, Veverly Hill, Jennifer Fernandez, Joseph Fuardo, Vincent Avoletta, Carolyn Tholen, Amanda Klarman, Christian Rota, Erik Quintana, and Robert Till, Special Agent Dan Wehrle, Task Force Officer Darrell Gregory, Sergeants Justin Kealy and John Kolakowski, and "JOHN and/or JANE DOES" Nos. 1, 2, 3, etc., in their individual capacities as officers, detectives, supervisors, and/or other agents, and employees of the DEA's New Jersey Drug Enforcement Task Force 1; and "RICHARD and/or RACHEL ROES" Nos. 1, 2, 3, etc., in their individual capacities as officers, detectives, supervisors, and/or other agents, and employees of the Hudson County Prosecutor's Office and/or State of New Jersey; and "STANLEY and/or SALLY SOES" Nos. 1, 2, 3, etc., in their individual capacities as officers, detectives, supervisors, and/or other agents, and employees of the Hudson County Prosecutor's Office Narcotics Task Force,<br><br>      Defendants. | CASE NO.<br><br>Civil Action<br><br><br>COMPLAINT |

1

The Plaintiff Felix Santiago residing at 1224 Oakwood Road, Belmar, New Jersey 07719, allege:

## **PRELIMINARY STATEMENT**

This is a civil rights action brought by Mr. Santiago who was falsely arrested and falsely imprisoned as a result of flagrant constitutional violations by the United States of America (hereinafter the "United States") and Hudson County (hereinafter the "County") based on and arising out of the wrongful acts and omissions of the United States Drug Enforcement Administration (hereinafter "DEA"), Hudson County, Hudson County Prosecutor's Office, Hudson County Prosecutor's Office Narcotics Task Force, DEA New Jersey Group Task Force 1, and individual employees, agents, and investigators of these offices.

On April 11, 2019, pursuant to an improperly executed anticipatory search warrant, Santiago was arrested when evidence of narcotics was found in a parcel addressed to a different location than where he was located and delivered by a United States Postal Inspectional Agent.  A Task Force Officer with the United States Drug Enforcement Administration, Michael Patti, falsified information in multiple affidavits, including that which was filed with the Criminal Complaint which led to his improper incarceration for almost nine months before the United States Attorney for the District of New Jersey, Craig Carpenito, finally produced the contents of the pizzeria's surveillance cameras confirming the false averments of Patti.  Immediately thereafter, Santiago's charges were dropped and he was released.

Santiago now seeks redress pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (hereinafter

"Bivens") and under 42 § U.S.C. 1983 and New Jersey State law for the injuries caused by the unconstitutional conduct of Federal, State, and County officials.

Santiago seeks redress for (i) compensatory damages for psychological and emotional distress, and financial loss caused by the illegal actions of the defendants, (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

Jurisdiction is asserted under 28 U.S.C. §1331, 1341 and 1343 in so far as Plaintiff's complaint asserts claims under the Civil Rights Act, 42 U.S.C. §1983, and by virtue of State claims based on supplemental jurisdiction, pursuant to 28 U.S.C. §1367. Moreover, as Defendants Patti, Novo, Marchese, and all other defendants were acting under the direction of the United States Drug Enforcement Administration at the time of the events in question, jurisdiction is also proper under the holding of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), as this action seeks to vindicate the violation of Constitutional Rights by a federal employee. Finally, this Court also has jurisdiction under claims asserted under the Federal Tort Claims Act, as Mr. Santiago has filed timely claims with the United States Drug Enforcement Administration, and that claim was rejected by that agency within six months of the filing of this action.

Plaintiff also complied with the requirements of N.J.S.A. 59:1-1, et seq. by making and serving a notice of claim on the County of Hudson within the time required and more than six months have passed since the same.

## VENUE

Venue is proper under 28 U.S.C. §1391(e)(1)(A) – (B) because Defendants to this action reside in this judicial district and the events giving rise to Plaintiff's claims occurred in this judicial district.

## JURY DEMAND

Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## THE PARTIES

1.  Felix Santiago (hereinafter "Santiago" or "Plaintiff"), was at all times herein a resident of New Jersey.

2.  Defendant United States of America operates the Drug Enforcement Administration ("DEA") within the United States Department of Justice. The DEA is the federal law enforcement agency that, in conjunction with the Hudson County Prosecutor's Office, Hudson County Prosecutor's Office Narcotics Task Force, and the United States Postal Inspectional Service, conducted an investigation that led culminated in Santiago getting arrested and serving over eight months incarcerated before the false allegations made by members of the DEA, Hudson County Prosecutor's Office, and Hudson County Prosecutor's Office Narcotics Task Force.  The United States of America is a defendant to this action pursuant to the FTCA, 28 U.S.C. § 2671, et. Seq., with respect to Plaintiff's claims arising from the tortious acts and/or omissions of employees and agents of the DEA, an agency of the United States.  Under the laws of the State of New Jersey, these acts and omissions constitute common law torts of false arrest and malicious prosecution. Because the employees of the DEA were acting as employees of the United States at the time of

their wrongful acts alleged herein, pursuant to the FTCA, the United States is the appropriate defendant with respect to these common law claims.

3.    Defendant, Hudson County (hereinafter "Hudson County" or collectively with the other named Defendants as "Defendants") is a municipal corporation recognized under appropriate statutes of the State of New Jersey.  It maintains the Prosecutor's Office and the Prosecutor's Office Narcotics Task Force.

4.    Defendant Hudson County maintains the Hudson County Prosecutor's Office and the Hudson County Prosecutor's Office Narcotics Task Force authorized to perform all functions of a prosecutor's office as per the applicable laws of the State of New Jersey.

5.    Defendant Hudson County Prosecutor's Office is a department within the local government entity known as the County of Hudson and is recognized by state statutes as the type of department which is responsible for law enforcement within the geographical bounds of the appointing authority, County of Hudson.

6.    Defendant Hudson County Prosecutor's Office Narcotics Task Force is an investigatory unit of the Hudson County Prosecutor's Office and is recognized as the type of unit that investigates narcotics trafficking.

7.    Defendant Detective Michael Patti (hereinafter "Patti" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

8.    Defendant Task Force Officer Michael Patti (hereinafter "Patti" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States

Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein. Patti is sued individually as a defendant in Plaintiff's claims under Bivens.

9.   Defendant Detective Mario Novo (hereinafter "Novo" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a Hudson County Prosecutor's Office detective and/or a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

10. Defendant Task Force Officer Mario Novo (hereinafter "Novo" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein. Novo is sued individually as a defendant in Plaintiff's claims under Bivens.

11. Defendant Sergeant Justin Kealy (hereinafter "Kealy" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a Hudson County Prosecutor's Office sergeant and/or a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

12. Defendant Task Force Officer Justin Kealy (hereinafter "Kealy" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct

investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Kealy is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

13. Defendant Sergeant John Kolakowski (hereinafter "Kolakowski" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a Hudson County Hudson County Prosecutor's Office sergeant and/or a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

14. Defendant Task Force Officer John Kolakowski (hereinafter "Kolakowski" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 846 and responsible for certain actions or inactions as set forth herein. Kolakowski is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

15. Defendant Detective Josue Velez (hereinafter "Velez" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

16. Defendant Task Force Officer Josue Velez (hereinafter "Velez" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct

investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846846 and responsible for certain actions or inactions as set forth herein. Velez is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

17. Defendant Detective Chad Gigante (hereinafter "Gigante" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

18. Defendant Task Force Officer Chad Gigante (hereinafter "Gigante" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 846 and responsible for certain actions or inactions as set forth herein. Gigante is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

19. Defendant Detective Veverly Hill (hereinafter "Hill" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

20. Defendant Task Force Officer Veverly Hill (hereinafter "Hill" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code,

Sections 841 and 846846 and responsible for certain actions or inactions as set forth herein.  Hill is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

21. Defendant Detective Jennifer Fernandez (hereinafter "Fernandez" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

22. Defendant Task Force Officer Jennifer Fernandez (hereinafter "Fernandez" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 846 and responsible for certain actions or inactions as set forth herein. Fernandez is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

23. Defendant Detective Joseph Fuardo (hereinafter "Fuardo" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

24. Defendant Task Force Officer Joseph Fuardo (hereinafter "Fuardo" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code,

Sections 841 and 846 846 and responsible for certain actions or inactions as set forth herein. Fuardo is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

25. Defendant Detective Vincent Avoletta (hereinafter "Avoletta" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

26. Defendant Task Force Officer Vincent Avoletta (hereinafter "Avoletta" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Avoletta is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

27. Defendant Detective Carolyn Tholen (hereinafter "Tholen" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

28. Defendant Task Force Officer Carolyn Tholen (hereinafter "Tholen" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code,

Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Tholen is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

29. Defendant Detective Amanda Klarman (hereinafter "Klarman" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

30. Defendant Task Force Officer Amanda Klarman (hereinafter "Klarman" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Klarman is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

31. Defendant Detective Christian Rota (hereinafter "Rota" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

32. Defendant Task Force Officer Christian Rota (hereinafter "Rota" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code,

Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Rota is sued individually as a defendant in Plaintiff's claims under Bivens.

33. Defendant Detective Erik Quintana (hereinafter "Quintana" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

34. Defendant Task Force Officer Erik Quintana (hereinafter ("Quintana" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Quintana is sued individually as a defendant in Plaintiff's claims under Bivens.

35. Defendant Detective Robert Till (hereinafter "Till" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

36. Defendant Task Force Officer Robert Till (hereinafter "Till" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code,

Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Till is sued individually as a defendant in Plaintiff's claims under Bivens.

37. Defendant Detective Stephen King (hereinafter "King" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a Hudson County Prosecutor's Office Narcotics Task Force member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

38. Defendant Task Force Officer Stephen King (hereinafter "King" or collectively with the other named Defendants as "Defendants") was at all times relevant herein a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  King is sued individually as a defendant in Plaintiff's claims under Bivens.

39. Defendant Special Agent Dan Wehrle (hereinafter "Wehrle" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a United States Drug Enforcement Agency New Jersey Group Task Force 1 member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

40. Defendant Special Agent Dan Wehrle (hereinafter "Wehrle" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a United States Drug Enforcement Agency New Jersey Group Task Force 1 member  and a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code,

Sections 841 and 846 and responsible for certain actions or inactions as set forth herein.  Wehrle is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

41. Defendant Task Force Office Darrell Gregory (hereinafter "Gregory" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a United States Drug Enforcement Agency New Jersey Group Task Force 1 member, acting under color of state law, and was responsible for certain actions and inactions as set forth herein.

42. Defendant Task Force Officer Darrell Gregory (hereinafter "Gregory" or collectively with the other named Defendants as "Defendants"), was at all times relevant herein a United States Drug Enforcement Agency New Jersey Group Task Force 1 member  and a "task force officer" and an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21, United States Code, Sections 841 and846 and responsible for certain actions or inactions as set forth herein.  Gregory is sued individually as a defendant in Plaintiff's claims under <u>Bivens</u>.

43. Defendants "John and/or Jane Does" Nos. 1, 2, 3, etc. ("Agent Does"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who is sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those other officers, detectives, supervisors, and/or other agents, and employees of the DEA's New Jersey Drug Enforcement Task Force 1 and were acting in their individual capacities within the scope of their employment and under color of Federal law. They are sued individually as defendants in plaintiff's claims under Bivens.

44. Defendants "Richard and/or Rachel Roes" Nos. 1, 2, 3, etc. ("Officer Roes"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who

are sued herein by the fictitious designations "Richard Roe" and "Rachel Roe," represent those other officers, detectives, supervisors, and/or other agents, and employees of the Hudson County Prosecutor's Office and/or State of New Jersey, acting under color of law and in their individual capacities within the scope of employment or agency pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Hudson and the State of New Jersey, who participated in the misconduct described herein. They are entitled to indemnification under the New Jersey Tort Claims Act and by contract. They are sued in their individual capacities under 42 U.S.C. § 1983 and New Jersey State Law.

45. Defendants "Stanley and/or Sally Soes" Nos. 1, 2, 3, est. ("Hudson County Prosecutor's Office Narcotics Task Force Members Soes"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who is sued herein by the fictitious designations "Stanley Soe" and "Sally Soe," represent those other investigators, agents, and employees of the Hudson County Prosecutor's Office Narcotics Task Force, acting under color of law and in their individual capacities within the scope of employment or agency pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the County of Hudson and the State of New Jersey, who participated in the misconduct described herein. They are entitled to indemnification under New Jersey Tort Claims Act and by contract. They are sued in their individual capacities under 42 U.S.C. § 1983 and New Jersey State Law.

## FACTUAL ALLEGATIONS

46. On or about April 11, 2019, Hudson County Prosecutor's Office Narcotics Task Force Members Kealy, Kolakowski, Novo, Velez, Patti, Gigante, Hill, Fernandez, Fuardo, Avoletta, Tholen, Klarman, Rota, Quintana, Till, King, United States Postal Inspectional Service Inspectors Marchese and Sarro, and United States Drug Enforcement Administration New Jersey Group Task

Force 1 members Wehrle and Gregory, were acting in conjunction with, temporarily assigned to, and/or were part of the United States Drug Enforcement Administration operating out of the Hudson County Prosecutor's Office.  (See Hudson County Prosecutor's Office Supplemental Report ("April 11 report") authored by Novo and dated April 11, 2019 attached hereto as Exhibit A).

47.  The individuals listed in paragraph 39 "met at Task Force headquarters to conduct pre-operational briefing.  During that meeting, a plan was put forth to conduct delivery of the postal parcel containing the suspected CDS cocaine to Firehouse Blazing Pizza and later execute the anticipatory search warrant of the premise upon successful delivery."  Id. at page 2 of 9.

48. The plan was "USPIS Inspectors Austin Marchese, and Peter Sarro, would conduct the controlled delivery of that parcel laden with CDS cocaine, and upon successful delivery of that parcel the anticipatory search warrant, we would then await orders from Sergeant Kealy to execute the Federal Search Warrants of Firehouse Blazing Pizza."  Ibid.

49. According to the April 11 report, '[a]t approximately 2:22 PM., Santiago was observed by Sergeant Kealy arriving in the Mercedes Benz and parking in front of 492 Central Avenue, Santiago then entered the pizzeria."  Ibid.

50. According to the April 11 report, "at approximately 2:32 PM., USPIS Inspectors Austin Marchese, and Peter Sarro departed the Post Office to conduct the delivery."  Ibid.

51. According to the April 11 report, "[a]t approximately 2:36 PM., Santiago was observed by Sergeant Kealy exiting the pizzeria and entering the Mercedes Benz departing from the area . . ." Id. at 2-3.

52. The subject search warrant was an anticipatory search warrant that had two conditions. (See Attachment A to Search Warrant attached hereto as Exhibit B).

53. The first condition was that the "Parcel described in Paragraph 1 of Attachment B is physically accepted" and the second condition was that the parcel would be "transported inside the **Subject Premises**" thus establishing probable cause for the execution of the warrant.  Id.

54. According to the April 11 report, "[a]t approximately 2:42 PM., the parcel was delivered by Inspector Marchese."  See Exhibit A at 3.

55. There is a copious amount of surveillance video from April 11, 2019 that shows exactly the events of the day.

56. Inspector Marchese's "delivery" of the package consisted of himself brining the package into the pizzeria and placing it on the counter, obstructing the ability of the employee, Edgar Saenz (hereinafter "Saenz") working the counter from being able to perform his job.

57. Saenz then looks at another individual, David Machuca (hereinafter "David"), hands it to him, and that individual takes it to the basement.

58. Later Santiago enters the pizzeria and enters the basement.

59. There are no windows in the basement.

60. According to the April 11 report, "[a]t approximately 4:03 PM., Santiago was observed by Sergeant Kealy, driving the Mercedes Benz, arriving at the pizzeria and entered the establishment. At approximately 4:05 PM., Sergeant Kealy gave the order to execute the search warrant.  Sergeant Kolakowski, Detective Velez and the undersigned [Novo] were the first to enter the pizzeria announcing our presence while clearly displaying our authority.  Sergeant Kealy, Detectives Gigante, Tholen, Rota, Hill, Fernandez, Till, Fuardo, Avoletta, Klarman, Quintana, Patti, and King, Inspectors Marchese, and Sarro entered immediately after."  Ibid.

61. According to the April 11 report, "[u]pon arriving near the office located in the basement, Santiago yelled out that he was in the office.  Detective Velez ordered Santiago out of the office

and instructed him to keep his hands out in plain sight.  Upon Santiago exiting the office, the undersigned [Novo] secured Santiago and handcuffed him." Id.

62. The door to the office opened into the hallway and in the direction of the officers.

63. It is not possible to see into the office from the hallway without opening the door first.

64. Santiago was halfway through the doorway when an officer kicked the door back in his direction, striking Santiago, and causing him to fall to the ground.

65. Santiago sat handcuffed on the couch while a search of the premises was conducted.

66. Not surprisingly, the parcel carried into the pizzeria by Inspector Marchese was found in the building.

67. The parcel was unopened.

68. Photographs taken by Detective Gigante confirm the parcel was unopened.

69. At no time did Santiago handle the parcel.

70. On the evening of April 11, 2019, Patti and Novo interviewed Saenz.  This interview was recorded and a transcript was created.  See Transcript of Edgar Saenz attached hereto as Exhibit C.

71. The transcript lists as participants Novo, Saenz, and "unidentified male" which later was discovered to be Patti.

72. Saenz was unequivocal that the parcel was "delivered to [him] today by mail." Id. at 27.

73. Saenz was unequivocal that David Machuca claimed the parcel was his.  Ibid.

74. Saenz was unequivocal that he believed that David Machuca took the package into the basement, corroborating what is seen on the surveillance video.  Id. at 28.

75. Saenz stated that packages for the address above the pizzeria are delivered to the pizzeria and then given to the resident later.  Id. at 31-32.

76. Mr. Saenz never so much as indicated that Santiago touched, carried, opened or inspected the parcel.

77. Mr. Saenz never stated that Santiago claimed ownership of the package delivered by the government.

78. On April 12, 2019, Patti appeared before the Honorable Joseph A. Dickson, United States Magistrate Judge, to sign a Complaint against Santiago.

79. In Patti's Complaint, he states that he is "fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other items of evidence." See Attachment B to Criminal Complaint Mag. No. 19-6648 attached hereto as Exhibit D.

80. Patti further states that he is a Task Officer with the United States Drug Enforcement Administration. Id. at 1.

81. Patti asserted "[s]hortly after delivering the 7949 Parcel, law enforcement observed SANTIAGO take custody of it and enter the basement at Location-1 [the pizzeria]." Id. at 4.

82. Patti asserted "[l]aw enforcement proceeded to enter the basement and immediately observed that SANTIAGO appeared to opening the 7949 Parcel, at which time SANTIAGO was arrested." Ibid.

83. These statements are all contradicted by the video surveillance and photographs provided by the government purportedly showing the unopened packaged located in the basement of the building.

84. On May 3, 2019, Patti applied for a search warrant for the premises located at 2732 16th Street, Apartment 1005, Jersey City, New Jersey.

85. In paragraph 16 of the Affidavit to Judge Dickson, Patti asserted that Santiago opened the package and claimed ownership.

86. These assertions are patently contradicted by the aforementioned.

87. On May 29, 2019, Patti applied for a search warrant to search the DVR seized from the pizzeria.

88. Patti again claimed Santiago opened the parcel and claimed ownership.

89. The government obtained authorization to search the DVR on May 29, 2019.

90. Only a portion of the camera angles that were recorded from inside the premises were provided to Santiago's defense counsel.

91. On December 27, 2019, Santiago's defense counsel filed a pre-trial omnibus motion for, amongst other things, production of all of the footage contained on the DVR.

92. On January 2, 2020, Carly T. Schultz, USPO for the District of New Jersey made an entry into the District of New Jersey Post Conviction Chronological Record Report which states "Call from Mario Novo, Hudson County Pros, this date.  Advised that DEA Agent and AUSA messed up initial complaint for case and case will likely have to be dismissed.  Complaint states in last section that offender himself took possession of package and brought into basement of pizzeria, however, another individual did so for him.  Det. Novo spent a lot of time on case and rightfully upset for this error and case having to be dismissed because of it."  See January 2, 2020 entry of Carly T. Schultz attached hereto as Exhibit E.

93. On January 3, 2020, Craig Carpenito, United States Attorney for the District of New Jersey filed an Order for Dismissal dismissing all charges against Santiago.  See January 3, 2020 Order of Dismissal signed by The Honorable Claire C. Cecchi, U.S.D.J. attached hereto as Exhibit F.

94. Santiago spent a total of 8 months and 28 days incarcerated based on the demonstrably false information supplied to the Magistrate Judge by Patti in the Affidavit in support of the Criminal Complaint.

95. The terms of the anticipatory warrant were not met at the time of its execution.

## DAMAGES

96. The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of all defendants above, DEA Agent Does, Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes caused Santiago to be falsely arrested and imprisoned, maliciously prosecuted, and forced Santiago to be imprisoned for approximately eight months and twenty eight days for a crime he did not commit.

97. As a direct result of bad faith, willful, wanton, reckless, and/or deliberately indifferent acts and omissions by Patti, Novo, and the other law enforcement officer defendants, Santiago sustained injuries and damages, which continue to date and will continue into the future, including: loss of freedom; pain and suffering; severe mental anguish; emotional distress; loss of family relationships; severe psychological damage; loss of property; loss of income; humiliation, indignities and embarrassment; and degradation, for which he is entitled to monetary relief.

98. When Santiago was falsely arrested for this crime, he had an excellent and ongoing relationships with his wife and various other family members, most of which relationships were cut off, aside from occasional prison visits, for the remainder of his imprisonment of eight months and twenty eight days. Santiago's relationship with his wife was irreparably damaged as she filed for a divorce.

99. Defendants' unlawful actions also caused Santiago to suffer significant mental anguish; social stigma; restrictions on liberty; loss of property; interference with familial relationships; and financial burdens.

100.      All the acts and omissions committed by the Defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

## COUNT I
## False Arrest Pursuant to FTCA
## (Against the United States)

101.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

102.     The DEA, DEA New Jersey Group Task Force 1, Patti, Novo, Kealy, the above described defendants, and Agent Does intended to and did confine Santiago for an extended period of time, of which confinement Santiago was conscious and to which he did not consent. Santiago's confinement was not otherwise privileged.

103.     Specifically, the DEA, DEA New Jersey Group Task Force 1, Patti, Novo, Kealy, the above described defendants, and Agent Does, acting individually and in concert with themselves and with Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, caused Santiago to be arrested for possessing drugs and other drug related criminal charges stemming from the April 11, 2019 search warrant execution and subsequent falsified Affidavits, including Patti's in support of the Criminal Complaint, when they knew probable cause did not exist to charge Santiago with those crimes. As a result of these defendants' actions, Santiago was taken into custody for almost nine months.

104.     The DEA, Patti, Novo, Kealy, the above described defendants, and Agents Does performed the above-described acts under color of federal law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

23

105.     As a direct and proximate result of these defendants' actions, Santiago was wrongly imprisoned for approximately eight months and twenty eight days and suffered the other grievous and continuing damages and injuries set forth above.

106.     The foregoing actions of the DEA, Patti, Novo, Kealy, the above described defendants, and Agent Does constitute the tort of false arrest under the laws of the State of New Jersey.

107.     These defendants committed the above acts and omissions while acting within the scope of their offices or employment with the United States. Accordingly, pursuant to 28 U.S.C. § 2679, the United States is the appropriate defendant in Santiago's false arrest claim.

108.     As a result of the foregoing acts and omissions of its employees, if the United States were a private person it would be held liable under New Jersey law to plaintiff Santiago for the tort of false arrest.

<u>**COUNT II**</u>
<u>**Malicious Prosecution Pursuant to FTCA**</u>
<u>**(Against United States)**</u>

109.     The DEA, Patti, Novo, Kealy, the above described defendants, and Agent Does, despite knowing that probable cause did not exist to arrest Santiago and prosecute him with criminal charges stemming from the April 11, 2019 search warrant execution intentionally, recklessly, and with malice caused Santiago to be arrested and prosecuted for those crimes. Furthermore, these defendants intentionally withheld from and misrepresented to prosecutors, and the Court, facts that further vitiated probable cause against Santiago, including but not limited to the facts that the criminal drug evidence they falsely charged Santiago with had not been in Santiago's possession or control nor were the terms of the anticipatory search warrant met at the time of its execution.

24

110.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on or about January 3, 2019, when all of the charges against him were dismissed at the request of the prosecution. Santiago was released from custody as a result.

111.     As a direct and proximate result of these defendants' actions, Santiago was wrongly imprisoned for approximately eight months and twenty eight days and suffered the other grievous and continuing damages and injuries set forth above.

112.     The foregoing actions of the DEA, Patti, Novo, Kealy, the above described defendants, and Agent Does constitute the tort of malicious prosecution under the laws of the State of New Jersey.

113.     These defendants committed the above acts and omissions while acting within the scope of their offices or employment with the United States. Accordingly, pursuant to 28 U.S.C. § 2679, the United States is the appropriate defendant in Santiago's malicious prosecution claim

114.     As a result of the foregoing acts and omissions of its employees, if the United States were a private person it would be held liable under New Jersey law to plaintiff Santiago for the tort of malicious prosecution.

<u>**COUNT III**</u>
<u>**42 U.S.C. § 1983 4th Amendment False Arrest Pursuant to Bivens**</u>
<u>**(Against Drug Enforcement Agency Defendants Patti, Novo, Kealy, and the above described defendants, and Agent Does)**</u>

115.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

116.     Defendants Patti, Novo, Kealy, the above described defendants, and Agent Does intended to and did confine Santiago for an extended period of time, of which confinement

Santiago was conscious and to which he did not consent. Santiago's confinement was not otherwise privileged.

117.     Specifically, these defendants, acting individually and in concert, caused Santiago to be arrested for possessing drugs and other related criminal charges stemming from the April 11, 2019 search warrant execution when they knew probable cause did not exist to charge Santiago with those crimes. As a result of these defendants' actions, Santiago was taken into custody.

118.     These defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

119.     As a direct and proximate result of these defendants' actions, Santiago was wrongly imprisoned for approximately eight months and twenty eight days and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT IV**
**42 U.S.C. § 1983 4th Amendment Malicious Prosecution Pursuant to Bivens**
**(Against Drug Enforcement Agency Defendants Patti, Novo, Kealy, the above described defendants, and Agent Does.)**

120.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

121.     Defendants Patti, Novo, Kealy, the above described defendants, and Agent Does, with malice and knowledge that probable cause did not exist to arrest Santiago and prosecute him with criminal charges stemming from the April 11, 2019 search warrant, acting individually and in concert, caused Santiago to be arrested, charged, and prosecuted for those crimes, thereby violating Santiago's clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free of unreasonable searches and seizures.

122.     Specifically, these defendants, acting individually and in concert, fabricated evidence and intentionally withheld from and misrepresented to prosecutors and the Court exculpatory facts that vitiated probable cause against Santiago, including, but not limited to, the fact that the criminal drug evidence used to charge Santiago had not been in Santiago's possession and control, nor were the terms of the anticipatory search warrant met at the time of its execution.

123.     These defendants performed the above-described acts under color of federal law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

124.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3, 2020, when all criminal charges against him were dismissed.

125.     As a direct and proximate result of these defendants' actions, Santiago spent approximately eight months and twenty eight days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT V**
**42 U.S.C. § 1983 5th Amendment Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence and Withholding Material Exculpatory and Impeachment Evidence Pursuant to Bivens**
**(Against Drug Enforcement Agency Patti, Novo, Kealy, the above described defendants, and Agent Does)**

126.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

127.     Defendants Patti, Novo, Kealy, the above described defendants, and Agent Does, acting individually and in concert with themselves and with Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New

Jersey Group Task Force 1 Members Voes, deprived Santiago of his clearly established constitutional right, under the Fifth Amendment of the United States Constitution, to a fair trial.

128.     These defendants deprived Santiago of his right to a fair trial by withholding material exculpatory and impeachment evidence from the defense, including without limitation that the criminal evidence used to criminally charge Santiago had never been in the possession nor control of Santiago, was obtained illegally when the anticipatory warrant was executed without the conditions precedent being met, and the exculpatory evidence vis a vis the surveillance video evidence the falsity of the Affidavits was withheld until a Motion to Compel the same was filed.

129.     These defendants performed the above-described acts under color of federal law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

130.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3, 2020, when all criminal charges against him were dismissed.

131.     As a direct and proximate result of these defendants' actions, Santiago spent approximately eight months and twenty eight days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT VI**
**42 U.S.C. § 1983 Failure to Intercede Pursuant to Bivens**
**(Against Drug Enforcement Agency Defendants, the above named defendants, and Agent Does)**

132.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

133.     By their conduct and under color of federal law, defendants Agent Does had opportunities to intercede on behalf of Santiago to prevent his false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

134.     These defendants' failures to intercede violated Santiago's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No reasonable officer in 2018 would have believed that failing to intercede to prevent these defendants from causing Santiago to be arrested and prosecuted without probable cause, fabricating inculpatory evidence, and withholding material, exculpatory and/or impeachment evidence was lawful.

135.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3, 2020, when all criminal charges against him were dismissed.

136.     As a direct and proximate result of these defendants' actions, Santiago spent approximately eight months and twenty eight days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

### COUNT VII
### 42 U.S.C. § 1983 Civil Rights Conspiracy Pursuant to Bivens
### (Against Drug Enforcement Agency Defendants Patti, Novo, Kealy, the above
### named defendants and Agent Does)

137.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

138.     Defendants Patti, Novo, Kealy, the above named defendants, and Agent Does, acting within the scope of their employment and under color of federal law, along with the other

29

defendants, agreed among themselves and with other individuals to act in concert in order to deprive Santiago of his clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

139.     In furtherance of the conspiracy, defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

a. Falsely arresting and imprisoning Santiago, knowing that they lacked probable cause;

b. Fabricating inculpatory evidence in reports and pretrial communications with the prosecution, including the false allegation that Santiago had been found in possession of drugs and other criminal evidence; and

c. Committing perjury during court hearings and the Affidavits.

140.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3, 2020, when all criminal charges against him were dismissed.

## COUNT VII

### 4th Amendment False Arrest Pursuant to 42 U.S.C. § 1983
### (Against Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, Patti, Novo, Kealy)

141.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

142.     Defendants Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, Patti, Novo, Kealy intended to and did confine Santiago for an extended period

of time, of which confinement Santiago was conscious of and did not consent to. Santiago's confinement was not otherwise privileged.

143.     Specifically, Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, Patti, Novo, Kealy, acting individually and in concert with themselves and with the DEA and Agent Does, caused Santiago to be arrested for possessing drugs and other drug related criminal charges stemming from the April 11, 2019 search warrant when they knew probable cause did not exist to charge Santiago with those crimes. As a result of these defendants' actions, Santiago was taken into custody.

144.     These defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

145.     As a direct and proximate result of these defendants' actions, Santiago was wrongly imprisoned for approximately eight months and twenty eight days and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT IX**
**4th Amendment Malicious Prosecution Pursuant to 42 U.S.C. § 1983**
**(Against Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, Patti, Novo, Kealy)**

146.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

147.     Defendants Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force

1 Members Voes, Patti, Novo, Kealy, with malice and knowing that probable cause did not exist to arrest Santiago and prosecute him with criminal charges stemming from the April 11, 2019 search warrant execution, acting individually and in concert, caused Santiago to be arrested, charged, and prosecuted for those crimes, thereby violating Santiago's clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution, to be free of unreasonable searches and seizures.

148.    Specifically, these defendants, acting individually and in concert, fabricated evidence and intentionally withheld from and misrepresented exculpatory facts that vitiated probable cause against Santiago, including, but not limited to, the fact that the criminal drug evidence used to charge Santiago had not been in Santiago's possession and control, the conditions precedent in the anticipatory search warrant were not met prior to its execution.

149.    These defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

150.    Santiago is completely innocent of the criminal charges stemming from the April 11, 2018 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3, 2020 when all criminal charges against him were dismissed.

151.    As a direct and proximate result of these defendants' actions, Santiago spent approximately four months and nineteen days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT X
### 14th Amendment Deprivation of Liberty Without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence and Withholding Material Exculpatory and Impeachment Evidence Pursuant to 42 U.S.C. § 1983

**(Against Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, Patti, Novo, Kealy)**

152.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

153.     Defendants Officer Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, Patti, Novo, Kealy, acting individually and in concert, deprived Santiago of his clearly established constitutional right to a fair trial under the Fourteenth Amendment of the United States Constitution.

154.     These defendants deprived Santiago of his right to a fair trial by withholding material exculpatory and impeachment evidence from the defense, including without limitation that the criminal evidence used to criminally charge Santiago.

155.     These defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Santiago's clearly established constitutional rights. No reasonable officer in 2019 would have believed this conduct was lawful.

156.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant. The prosecution finally terminated in Santiago's favor on January 3, 2020 when all criminal charges against him were dismissed.

157.     As a direct and proximate result of these defendants' actions, Santiago spent approximately eight months and twenty eight days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT XI**
**Failure to Intercede Pursuant to 42 U.S.C. § 1983**

**(Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes and the above named defendants)**

158.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

159.     By their conduct and under color of state law, defendants Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes, and the above named defendants had opportunities to intercede on behalf of Santiago to prevent his false arrest, malicious prosecution, false imprisonment, and deprivation of liberty without due process of law, but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

160.     These defendants' failures to intercede violated Santiago's clearly established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No reasonable police officer in 2019 would have believed that failing to intercede to prevent these defendants from causing Santiago to be arrested and prosecuted without probable cause, fabricating inculpatory evidence, and withholding material, exculpatory and/or impeachment evidence was lawful.

161.     Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3, 2020, when all criminal charges against him were dismissed.

162.     As a direct and proximate result of these defendants' actions, Santiago spent approximately four months and nineteen days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT XII**
**Civil Rights Conspiracy Pursuant to 42 U.S.C. § 1983**
**(Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes and the above named defendants)**

163.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

164.    Defendants Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes and the above named defendants, acting within the scope of their employment and under color of state law, along with Patti, Novo, Kealy, and Agent Does, agreed among themselves and with other individuals to act in concert in order to deprive Santiago of his clearly established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, and to a fair trial.

165.    In furtherance of the conspiracy, defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

a. Falsely arresting and imprisoning Santiago, knowing that they lacked probable cause;

b. Fabricating inculpatory evidence in reports and pretrial communications with the prosecution, including the allegation that Santiago had been found in possession of drugs and other criminal evidence; and

c. Committing perjury during court hearings and in Affidavits.

166.    Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on January 3m 2020, when all criminal charges against him were dismissed.

167.     As a direct and proximate result of these defendants' actions, Santiago spent approximately eight months and twenty eight days wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

**COUNT XIII**
**New Jersey State Constitutional Violations**
**(Against All Defendants)**

168.     Plaintiffs repeat and re-allege each and every allegation above as if fully set forth herein.

169.     The New Jersey Constitution provides in Art. I, Para. I, that all persons have certain unalienable rights of enjoying and defending life and acquiring and protecting property and pursuing and obtaining safety and happiness.  Additionally, other clauses of the New Jersey Constitution, including Articles I through XI, declared the right to life, liberty, and pursuit of safety and happiness of every person in the State of New Jersey.  The illegal and discriminatory acts of Defendants violated Plaintiff's State Constitutional Rights.

170.     Such conduct of Defendants is in violation of the New Jersey Constitution and resulted in significant harm to Santiago.

171.     The deprivation of plaintiff's rights under the New Jersey State Constitution resulted in the injuries and damages set forth above.

**COUNT XIV**
**Malicious Prosecution Pursuant to New Jersey State Law**
**(Against All Defendants)**

172.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

173.     Defendants despite knowing that probable cause did not exist to arrest Santiago and prosecute him with criminal charges stemming from the April 11, 2019 search warrant execution,

36

intentionally, recklessly, and with malice caused Santiago to be arrested and prosecuted for those crimes. Furthermore, these defendants intentionally withheld from and misrepresented to prosecutors and the Court facts that further vitiated probable cause against Santiago, including but not limited to the facts that the criminal drug evidence for which Santiago was falsely charged had not been in Santiago's possession or control and the conditions precedent of the anticipatory search warrant were not met when the warrant was executed.

174.    Santiago is completely innocent of the criminal charges stemming from the April 11, 2019 search warrant execution. The prosecution finally terminated in Santiago's favor on or about January 3, 2020, when all of the charges against him were dismissed at the request of the prosecution. Santiago was released from custody as a result.

175.    As a direct and proximate result of these defendants' actions, Santiago was wrongly imprisoned for approximately eight months and twenty eight days and suffered the other grievous and continuing damages and injuries set forth above.

## COUNT XV
## Respondeat Superior Claim Pursuant to New Jersey State Law
## (Against County of Hudson and State of New Jersey)

176.    Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

177.    At all times relevant to this Complaint, defendants Patti, Novo, Kealy  Hudson County Prosecutor's Officers Roes, Hudson County Prosecutor's Office Narcotics Task Force Members Soes, and DEA New Jersey Group Task Force 1 Members Voes and the above named defendants, acted as agents of the County of Hudson and/or State of New Jersey, in furtherance of the business, including law enforcement functions, of the County of Hudson and/or State of New

Jersey, and within the scope of their employment or agency with the County of Hudson and/or State of New Jersey.

178.     The conduct by which these defendants committed the torts of false arrest and malicious prosecution was not undertaken for personal motives, but rather was undertaken while the these defendants were on duty, carrying out their routine investigative functions as detectives and investigators.

179.     Under the doctrine of *respondeat superior*, the County of Hudson and/or State of New Jersey is liable for their agents' state law torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence.

## COUNT XVI
## Violation of 42 U.S.C. § 1983 for Failure to Train
## (Against All Defendants)

180.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

181.     Defendants' hiring and training practices are inadequate.  As such Defendants were deliberately indifferent to the rights of Santiago.  This failure to train the officers and task force members reflects a deliberate and/or conscious choice by the DEA, County of Hudson, County of Hudson Prosecutor's Office, County of Hudson Prosecutor's Office Narcotics Task Force, the State of New Jersey, and DEA New Jersey Group Task Force 1 to become a custom or policy.

182.     Such conduct of Defendants is in violation of 42 U.S.C. §1983 and resulted in significant harm to Santiago.

183.     As a direct result of the actions of these defendants, Plaintiff has suffered significant harm.

## COUNT XVII
### Common Law Causes of Action including, but not limited to, negligent hiring, supervision, discipline, and retention of dangerous police officers.
### (Against All Defendants)

184.     Plaintiff hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

185.     The above actions of defendants constituted negligent hiring and/or supervision and/or disciplining and retention of dangerous police officers and/or false arrest and/or abuse of process.

186.     Such conduct of Defendants is in violation of the common law of New Jersey and resulted in significant harm to Santiago.

187.     As a direct result of the actions of all Defendants, Plaintiff has suffered significant harm.

**WHEREFORE**, Santiago prays as follows:

(a) That the Court award compensatory damages to him and against the defendants, jointly and severally, in an amount to be determined at trial;

(b) That the Court award punitive damages to him against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

(c) For a trial by jury;

(d) For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

(e) For any and all other relief to which he may be entitled.

Dated: April 9, 2021

Christopher J. Conrad
EICHEN CRUTCHLOW ZASLOW, LLP
40 Ethel Road
Edison, New Jersey 08817
(732) 777-0100